IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW GONZALES,

        Petitioner,

v.                                                                          1:13-cv-00616-LH-LF

JOSEPH GARCIA, et al,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on remand from the Tenth Circuit (Doc. 46-1) to consider the merits of Andrew Gonzales's amended petition for habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 9). Senior District Judge C. LeRoy Hansen referred this matter to me pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Virginia Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), to recommend to the Court an ultimate disposition of the case. Doc. 73. Having reviewed the submissions of the parties and the record, I find that the state trial court violated Gonzales's Sixth Amendment right to confront the witnesses against him. I therefore recommend that the Court grant Gonzales's amended petition for a writ of habeas corpus and vacate his state court conviction.

### I.  Background Facts and Procedural Posture

On August 23, 2011, a jury found Gonzales guilty of driving while under the influence of intoxicating liquor and/or drugs in violation of NMSA 1978, § 66-8-102(D)(3) ("DWI"). Doc. 66 at 124. Deputy Kevin Bell arrested Gonzales for DWI in January of 2011, following a report of a vehicle weaving across the roadway and traveling at excessive speeds. *Id*. at 38–40. Deputy Bell located the vehicle and observed Gonzales operate the vehicle and exit from the driver's

side. *Id.* at 40–41.  When he encountered Gonzales, Deputy Bell noticed that Gonzales showed signs of intoxication.  *Id*. at 41.  Deputy Bell conducted field sobriety tests and determined that he had probable cause to arrest Gonzales for DWI.  *Id*. at 42–45.  Following the arrest, Gonzales refused to perform an alcohol breath test.  *Id*. at 47.  Deputy Bell then obtained a blood sample which was sent to the New Mexico Scientific Laboratory Division ("SLD").  *Id.* at 48–52.

Before trial, the state requested that the court permit the SLD analyst to testify live via video at the trial.  Doc. 62-1 at 1–3.  The state argued that because of the significant number of DWI cases in New Mexico that required a blood draw, it was difficult for SLD witnesses to appear at all necessary hearings, and that as a cost saving measure it would be "economically responsible and prudent" to allow the testimony by video.  *Id.* at 1.  The state noted that it "presumed" that Gonzales opposed the motion.  *Id.* at 2.  Two days later, and with no response from Gonzales, the court granted the motion*. Id.* at 4.  The court did not make any specific findings or provide any reasoning for granting the motion.  *Id*.

During trial, Anna Isabella Valdez, a forensic toxicologist with SLD, testified live via video.  Doc. 66 at 79–80.  Although she was not in the courtroom, Ms. Valdez testified under oath, she could see Gonzales and his counsel, and they could see her.  *Id*. at 80–81.  The jury also was able to see Ms. Valdez as she testified.  *Id.* at 81.  Ms. Valdez testified that she tested Gonzales's sample for blood alcohol concentration ("BAC").  *Id*. at 81–82, 85–90.  Gonzales's "blood results were 0.14 grams per 100 milliliters of alcohol concentration in the sample."  *Id.* at 90.  Gonzales's counsel cross-examined Ms. Valdez at the trial.  *Id*. at 91–92.

At the conclusion of the trial, the court instructed the jury as follows:

> For you to find the Defendant guilty of driving with a blood alcohol concentration of 8/one hundredths, .08 or more, as charged in Count One, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. That Defendant operated a motor vehicle.

2. Within three hours of driving the Defendant had an alcohol concentration of 8/one hundredths, .08 grams or more in 100 milliliters of blood and the alcohol concentration resulted from alcohol consumed before or while driving the vehicle.

3. This happened in New Mexico on or about the 8th day of January 2011.

*Id*. at 107–08.  The jury found Gonzales guilty, and the court sentenced him to three years in prison.  *Id.* at 124–25.

While Gonzales was serving his sentence, he filed the instant application for a writ of habeas corpus.  Doc. 9.  During the pendency of this case, Gonzales was released from custody.  *See* Doc. 34-1 (showing that Gonzales was released on October 28, 2013).  The Court determined that Gonzales's application was moot and dismissed his petition.  Doc. 79.  On appeal, the Tenth Circuit held that the district court erred "because the court did not apply the presumption of collateral consequences arising from Gonzales's conviction and mistakenly assumed that the only relevant collateral consequences derived from the New Mexico DWI statute, N.M. Stat. § 66-08-102, under which Gonzales was convicted."  Doc. 46-1 at 2.  Accordingly, the Tenth Circuit remanded the case to the district court with instructions to vacate the dismissal of Gonzales's habeas petition.  *Id.*

Following the mandate of the Tenth Circuit, the parties submitted a joint status report advising the Court that only two issues remained for the Court's consideration:  Ground Two, regarding the Confrontation Clause violation; and a sub-claim of Ground One, regarding the sufficiency of evidence.  Doc. 57 at 2.  Because I recommend that the Court grant Gonzales's

petition based on a violation of his Sixth Amendment right to confront witnesses, the Court need not address the second issue regarding the sufficiency of evidence.[1]

## II.     Legal Standards

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case.  A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention.  A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  For federal habeas claims not adjudicated on the merits in state courts, the Court must review the claim de novo, and the deferential standards of § 2254(d) do not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

The state court did not adjudicate the merits of Gonzales's Sixth Amendment Confrontation Clause claim.  Gonzales appealed his conviction to the New Mexico Court of Appeals ("NMCA").  Doc. 14-1 at 6–8.  Although he raised the "sufficiency of evidence" issue in his docketing statement, he did not raise an issue under the Confrontation Clause. *Id*. at 9–13. Following a notice of proposed summary affirmance, Gonzales sought leave to amend his

---

[1] It generally is a prerequisite to habeas relief that a petitioner exhaust his remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement is not jurisdictional, however, and may be waived by the state. *See Demarest v. Price*, 130 F.3d 922, 933–34 (10th Cir. 1997). Here, the state has expressly waived any failure to meet the exhaustion requirement by conceding that "Gonzales has exhausted state remedies and these issues [the Confrontation Clause violation and the insufficient evidence issue] are properly before this Court."  Doc. 57 at 2; *Clayton v. Gibson*, 199 F.3d 1162, 1170 (10th Cir. 1999).

docketing statement to add the Confrontation Clause issue. *Id*. at 18–19. The NMCA denied Gonzales's motion to amend and, therefore, did not address whether the trial court had violated Gonzales's Sixth Amendment rights.[2] *Id*. at 47–51. Gonzales then sought a petition for a writ of certiorari from the New Mexico Supreme Court, which the court denied. *Id*. at 52–62. Because the state court did not address the merits of Gonzales's Sixth Amendment right to confront witnesses, the Court reviews Gonzales's Confrontation Clause claim de novo.

### III.     Sixth Amendment Right to Confrontation

Gonzales contends that the state court violated his Sixth Amendment right to confront witnesses when it allowed the SLD analyst, Ms. Valdez, to testify by video. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The

---

[2] Had the state court considered the merits of Gonzales's Sixth Amendment claim, it likely would have reversed his conviction. The circumstances of this case are almost identical to those presented in *State of N.M. v. Chung*, 2012-NMCA-049, 290 P.3d 269. In *Chung*, the trial court, without a hearing, granted the state's motion to permit a crime lab analyst to testify by two-way video, without affording the defendant his right to respond, and without any case-specific findings of necessity. *Id.* ¶ 9, 290 P.3d at 271. The basis for the state's request was to save money and to avoid requiring the analyst to travel from Santa Fe to Aztec, New Mexico. *See id.* ¶¶ 3, 6, 12, 290 P.3d at 270–71. The New Mexico Court of Appeals held that the analyst's testimony by two-way video violated the defendant's Sixth Amendment right to confrontation. It explained:

> The State's motion cited to nothing more than "judicial economy" arising from allowing the analyst to testify by video conference because the analyst was located in Santa Fe, and the trial was being held in Aztec. This was merely an assertion that it would be more convenient for the witness, which [*State of N.M. v.*] *Almanza*[, 2007–NMCA–073, ¶ 1, 141 N.M. 751, 160 P.3d 932] unambiguously holds is not sufficient. On the basis of *Almanza* alone, it was error to grant the State's motion.

*Chung*, 2012-NMCA-049, ¶12, 290 P.3d at 271; *see also State of N.M. v. Schwartz*, 2014-NMCA-066, ¶¶ 5, 7–8, 15–29, 327 P.3d 1108, 1111–17 (testimony of four state witnesses by Skype violated defendant's confrontation rights, and with one exception, admission of video testimony was not harmless); *State of N.M. v. Smith*, 2013-NMCA-081, ¶¶ 4–15, 308 P.3d 135, 136–39 (testimony of state lab analyst by two-way video at DUI trial violated defendant's Sixth Amendment confrontation rights and was not harmless).

5

Sixth Amendment "reflects a preference for a face-to-face confrontation at trial," but that preference "must occasionally give way to considerations of public policy and the necessities of the case." *Maryland v. Craig*, 497 U.S. 836, 849 (1990).  The Confrontation Clause may be satisfied absent a physical, face-to-face confrontation at trial only where:  1) denial of such confrontation is necessary to further an important public policy; and 2) the reliability of the testimony is otherwise assured.  *Id.* at 850.  The trial court must make a <u>case-specific</u> finding that there is a necessity to further an important public policy.  *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988); *Craig*, 497 U.S. at 860; *United States v. Carrier*, 9 F.3d 867 (10th Cir. 1993) (affirming the district court's decision to allow testimony by two-way circuit television because the district court made specific findings that the procedure was necessary to protect the welfare of a child witness).  The reliability of testimony is "otherwise ensured:"  1) where the testimony is given under oath; 2) there is the opportunity for cross-examination; 3) the fact-finder has the ability to observe the demeanor of the witness; and 4) there is a reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence.  *Craig,* 497 U.S. at 845–46.

      Here, the reliability of the testimony was ensured because Ms. Valdez testified under oath, she was able to see the defendant and his counsel, the jury could observe her demeanor on the screen, and the defense had the opportunity to cross examine her in front of the jury.  Doc. 66 at 80–81, 91–93.  However, the trial judge did not make specific findings that the video testimony was necessary to further an important public policy.  In its pretrial motion requesting that the court allow video testimony, the government argued that "[d]ue to the significant number of DWI's in New Mexico, specifically those requiring a blood draw to confirm intoxication of a particular driver, it is very difficult for SLD witnesses to appear at all necessary hearings."  Doc. 62-1 at 1.  The state further argued that allowing the video testimony promoted "cost savings"

and was "economically responsible and prudent." *Id.*  The state court granted the motion two days later without making any specific findings that allowing the video testimony protected an important public policy.  Doc. 62-1 at 4.  By failing to make any specific findings, the trial court violated the Confrontation Clause of the Sixth Amendment.

Conceding this error, the state contends that it was harmless.  Harmless error analysis applies to Confrontation Clause cases.  *Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir. 2000).  "A federal court reviewing a state court determination in a habeas proceeding should not grant relief unless the court finds the trial error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Crespin v. State of N.M.*, 144 F.3d 641, 649 (10th Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *see also Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*], 386 U.S. 18 [(1967)].").  A habeas petitioner must establish that the violation resulted in actual prejudice.  *Crespin*, 144 F.3d at 649.  "Where a court 'is in grave doubt as to the harmlessness of the error . . . the [habeas] petitioner must win.'"  *Id*. (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995)).  The Court must examine the entire record to determine the error's possible effect on the jury.  *Jones*, 206 F.3d at 957 (citing *Crespin*, 144 F.3d at 649).

Whether an error is harmless depends on (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the

extent of the actual cross-examination; and (5) the overall strength of the state's case. *Littlejohn v. Trammell*, 704 F.3d 817, 845 (10th Cir. 2013). In *Littlejohn*, the Tenth Circuit agreed with the district court that the admission of deposition testimony admitted for absent witnesses—although a violation of the Confrontation Clause—was harmless. In that case, the proceeding at issue was a resentencing, and the contested testimony was "hardly the central evidence." *Id.* at 845. Further, the state offered other competent evidence that Littlejohn committed the crime of which he was accused.

Here, however, Valdez's testimony was crucial to the outcome of the case. Gonzales was charged with a violation of NMSA § 66-8-102(D)(3).[3] Doc. 14-3 at 32–33; Doc. 72 at 1; Doc. 74 at 2. Section 66-8-102(D)(3) does not specify the amount of blood alcohol concentration necessary for a violation of that section. Rather, a person can commit aggravated DWI under § 66-8-102(D)(3) for "refusing to submit to chemical testing, as provided for in the Implied Consent Act, and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs." NMSA § 66-8-102(D)(3). Nonetheless, the trial court instructed the jury that the state was required to prove three elements:

    1.    That [Gonzales] operated a motor vehicle.

---

[3] NMSA § 66-8-102(D)(3) states in pertinent part:

> D. Aggravated driving under the influence of intoxicating liquor or drugs consists of:
>
> 3) refusing to submit to chemical testing, as provided for in the Implied Consent Act, and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs.

      2.      Within three hours of driving Gonzales had an alcohol concentration of 8/one hundredths, .08 grams or more in 100 milliliters of blood and the alcohol concentration resulted from alcohol consumed before or while driving the vehicle.

      3.      This happened in New Mexico on or about the 8th day of January 2011.

Doc. 66 at 107–08. This instruction appears to be based on New Mexico Uniform Jury Instruction ("UJI") 14-4503,[4] which pertains to NMSA 1978, § 66-8-102(C)(1). To find Gonzales guilty consistent with the court's instructions, the jury was required to find that Gonzales had a BAC of .08 grams or more. The only source of evidence of Gonzales's BAC level was from Ms. Valdez, who testified that the blood results were 0.14 grams per 100 milliliters of alcohol concentration in the sample. Doc. 66 at 90.

The state argues that although Valdez's testimony was important, there was other evidence that Gonzales was driving under the influence of alcohol, including Deputy Bell's

---

[4] Jury instruction 14-4503, "Driving with a Blood or Breath Alcohol Concentration of Eight One-Hundredths (.08) or More; Essential Elements," states:

> For you to find the defendant guilty of driving with a blood or breath alcohol concentration of eight one-hundredths (.08) or more [as charged in Count _____ ],the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant operated a motor vehicle;
>
> 2. Within three (3) hours of driving, the defendant had an alcohol concentration of eight one-hundredths (.08) grams or more in [one hundred milliliters of blood]3 [or] [two hundred ten liters of breath] and the alcohol concentration resulted from alcohol consumed before or while driving the vehicle.
>
> 3. This happened in New Mexico, on or about the ___ day of _____, ___.

NMRA, Crim. UJI 14-4503. The Committee Commentary to UJI 14-4503 notes that "[t]his instruction pertains to NMSA 1978, § 66-8-102(C)(1)."

9

testimony.[5]  Had the state court instructed the jury with regard to the elements under NMSA 1976, § 66-8-102(D)(3),[6] the state's argument might have merit.  The jury reasonably could have drawn the inference from Deputy Bell's testimony that Gonzales was intoxicated, and because Gonzales refused to submit to chemical testing, convicted him under § 66-8-102(D)(3).

In this case, however, the jury could not ignore Valdez's testimony and still find Gonzales guilty.  As instructed by the court, the specific amount of alcohol concentration—not just the fact that Gonzales was intoxicated—was crucial to the jury's guilty verdict.  The second element of the jury instruction—that within three hours of driving Gonzales had a BAC greater than .08 grams in 100 milliliters of blood—was a necessary element that the jury used to return a

---

[5] For example, Deputy Bell testified that Mr. Gonzales's eyes were bloodshot and watery, a strong odor of alcohol was emanating from his person, and his speech was somewhat slurred. Doc. 66 at 41.  Deputy Bell attempted to administer standardized sobriety tests that Gonzales said he could not complete because of an ankle injury.  *Id*. at 42.  Because Gonzales could not perform the standardized tests, Deputy Bell administered non-standardized sobriety tests.  Gonzales failed the non-standardized tests, and Deputy Bell determined that he had probable cause to believe Gonzales was driving under the influence of alcohol.  *Id.* at 42–45.

[6] The jury instruction more consistent with § 66-8-102(D)(3) is instruction 14-4508, "Aggravated Driving While Under Influence of Alcohol or Drugs and Refusing to Submit to Chemical Testing; Essential Elements," which states in relevant part:

> For you to find the defendant guilty of aggravated driving while under the influence of [intoxicating liquor] . . ., the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant operated a motor vehicle;
>
> 2. At that time the defendant was under the influence of [intoxicating liquor; that is, as a result of drinking liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public;] . . .
>
> 3. The defendant refused to submit to chemical testing;
>
> 4. This happened in New Mexico, on or about the _____ day of _____, ____.

NMRA, Crim. UJI 14-4508.

guilty verdict. The only source of evidence of the BAC level was from Ms. Valdez. Therefore, the trial court's error—allowing Ms. Valdez to testify by video without first making specific findings—was <u>not</u> harmless. The evidence Ms. Valdez provided had a substantial and injurious effect in determining the jury's verdict.

### IV.     Recommendation

In this case, the state court violated Gonzales's Sixth Amendment right to confront the witnesses against him. That error was not harmless under the circumstances. I recommend that the Court grant Gonzales's amended petition for a writ of habeas corpus and vacate his state court conviction.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge